DAY, CATLIN & CO. *v.* SAMUEL RIDLEY AND JAMES WELTON.

The joint owners of personal property, entrusted to a common carrier, may maintain an action against him for its loss, notwithstanding the receipt, given for the property by the carrier at the time he received it, was an acknowledgment that he had received it from two of the plaintiffs,—the joint ownership of the other plaintiff being unknown to him : and such receipt, accompanied by parol proof that the plaintiffs were the real owners, is admissible in evidence for the plaintiffs.

Common carriers are excused from any injury to property entrusted to them, which is occasioned by the act of Providence.

It is the duty of common carriers on Lake Champlain to provide boats which shall be safe and sea-worthy for the season of year at which the goods are shipped.

In an action against common carriers, the burden of proof is on the plaintiffs to show that the property did not safely reach its destination ; but, where the plaintiffs proved that the defendants' boat, in which the property was stowed, was capsized, and the property damaged, and a portion of the property carried by the defendants to a place out of their course, it was held sufficient to throw the burden of proof on the defendants to account for the property.

TRESPASS ON THE CASE against the defendants, as common carriers on Lake Champlain. The plaintiffs offered in evidence the following receipt : " Received, Burlington, 2d Nov. 1836, of Hickok & Catlin, ninety five tierces oil meal, one firkin butter marked J. M. Catlin, one box merchandize, and ten barrels apples marked J. Tracy, Troy, to be delivered to White, Baker & Merrill, Troy. (Signed) *Samuel Ridley ;*" and accompanied the same by parol

evidence that the oil meal, specified in said receipt, was the property of the plaintiffs, and that Hickok & Catlin, who were two of the plaintiffs, were the shippers. To all which the defendants objected, but the court admitted the evidence. No evidence was given tending to show that the defendants had any knowledge that Day had an interest in the property in question.

The plaintiffs also gave evidence tending to prove that the defendants were joint owners of the boat on which said oil meal was shipped; and also evidence tending to prove negligence and unskilfulness on the part of the defendants, and that the boat and rigging were insufficient for navigating the Lake at the season when the property was shipped.

It appeared that, the same evening that the boat left Burlington for Troy, she was overtaken by a storm of wind, and capsized, and that the oil meal in question, being in casks not water proof, was much damaged. Seventy one casks of the oil meal were landed the next day at Charlotte, and were taken charge of, and shipped to Troy, by the plaintiffs. The defendants subsequently towed the boat across the Lake to Essex, New York, with the residue of the oil meal on board in the hold of the vessel, in casks not water tight, and there landed it. No evidence was given to show what subsequently became of it.

As to the casks so landed at Essex, the court instructed the jury that the burden of proof was on the defendants to account for them. The court also charged the jury that it was the duty of the defendants to have provided a boat safe and sea-worthy for the season of year (November) when the property was shipped, and that what would be suitable at other seasons, when it would be less difficult to navigate the lake, was not the criterion. But the jury were also told that, if the injury was occasioned by the act of Providence, the defendants would be excused.

The jury returned a verdict for the plaintiffs. Exceptions by defendants.

*W. P. Briggs* and *Hyde & Peck* for defendants.

1. The paper offered in evidence is not merely a receipt, but a contract, and cannot be varied by parol evidence. Had Hickok &

7

Catlin sued alone, the defendants would have been estopped from showing that Day was a joint owner, and this right must be mutual. This paper contains a complete contract to carry the goods to Troy, and, in an action by Hickok & Catlin, would be sufficient evidence on this point. The distinction between a receipt and a contract is, that the one *discharges* and the other *creates* an obligation. A receipt containing also a contract cannot be varied by parol. *Barber* v. *Brace,* 3 Conn. 9. *Pitkin* v. *Brainard et al.,* 5 Conn. 451. *Walker et al.* v. *Goddard,* 7 Conn. 304. *Jones* v. *Warner,* 11 Conn. 40. *Grant* v. *Naylor,* 2 Peter's Cond. Rep. 95. *Reed* v. *Wood,* 9 Vt. 285. *Wakefield* v. *Stutman,* 12 Pick. 562. *Creery* v. *Holly,* 14 Wend. 26. *Curtis* v. *Wakefield,* 15 Pick. 437. *Raymond* v. *Roberts,* 2 Aik. 204.

2. The burden of proof was on the plaintiffs to show a *non-delivery* of the property at the place of destination. The allegation that the property was not delivered is material, and one on which the recovery is founded ; and in such case the *onus probandi* is on him who makes the complaint. Arch. Pl. 324, 325. 2 Phil. Ev. 75. *Griffiths* v. *Lee et al.,* 11 Eng. C. L. 333. *Fleming* v. *Slocum,* 18 Johns. 403. Story on Bailments 152, 230. A culpable omission of duty is not to be presumed, but must be proved. *Williams v. East India Co.,* 3 East 192. *Finucane* v. *Small,* 1 Esp. 315.

3. The court ought to have left the question of sea-worthiness of the vessel to the jury generally, instead of confining it to the month of November.

*Allen & Platt* and *Smalley* for plaintiffs.

1. The writing offered in evidence was a simple receipt for the property, such as has been repeatedly adjudged could be explained by parol. *Burnap* v. *Partridge,* 3 Vt. 144. *Delaware* v. *Staunton,* 8 Vt. 48. Hickok & Catlin were the agents of the plaintiffs to forward the oil meal to New York, and, as is customary for forwarding merchants, and that class of agents, the carrier acknowledges that he has received the property of the agent. Such a receipt is hardly *prima facie* evidence of ownership,—certainly not *conclusive.*

2. As common carriers, the defendants were insurers of the property entrusted to them against every thing but the acts of God,

and the enemies of the country. *Crosby* v. *Fitch*, 12 Conn. 410, and cases there cited. It necessarily follows that they were bound to provide a vessel that was sea-worthy, and reasonably safe. 3 Kent's Com. 204, 216. Story on Bailments 330. *Forward* v. *Pittard*, 1 T. R. 33. *McLanahan et al.* v. *M. Ins. Co.*, 1 Peters' 183. *Davis* v. *Garrett*, 19 Eng. C. L. 214. *Williams* v. *Grant*, 1 Conn. 492.

The opinion of the court was delivered by

WILLIAMS, Ch. J. It was decided, when this case was before us two years since, that the plaintiffs could maintain this action. The receipt was a part of the case then, and a new trial would not have been awarded if we had considered that the present plaintiffs were precluded from maintaining this action in consequence of the receipt. The receipt was evidence of the delivery of the property to the defendants, and that they received it as common carriers.

The principal question in the case, at this time, arises on the charge of the court, that, as to the casks of oil meal landed at Essex, the burden of proof was upon the defendants. It is undoubtedly true that he who asserts a fact is usually bound to prove it, and, when a culpable neglect, or omission, or breach of duty is charged, the plaintiff is bound to prove it, though he may have to prove a negative. Had this been an action of assumpsit against the defendants on their contract to deliver the meal at Troy, it might have been sufficient to prove the delivery to the defendants, and then call upon them to account for it. *Tucker* v. *Cracklin*, 2 Stark. R. 385. (3 Eng. C. L. 394.) But, in this case, to support the averment of loss, it was necessary for the plaintiffs to give some evidence of loss, and thus far the burden of proof was on them. The burden of proof may be turned on the defendant, however, by slight proof. *Griffith* v. *Lee*, 1 C. & P. 110, ( 11 Eng. C. L. 333.) As to the casks of oil meal landed at Charlotte, and subsequently taken by the plaintiffs, there is no question now before us, as it is not contended but that the charge of the court as to that portion of the cargo was correct ; and as to the casks landed at Essex, we think the evidence was sufficient *prima facie* to prove the averment of loss, and turn the burden of proof on the defendants. It appeared that the vessel

was capsized, and the casks of meal landed at Essex, out of the course, and there was also evidence tending to show damage. The jury were instructed that, if the injury was occasioned by the act of Providence, the defendants were excused for any damage occasioned thereby to the property in question. If the casks of meal were in fact afterwards delivered to the consignees, without any further damage than what was occasioned by the act of God, it was in the power of the defendants to prove it, and it was their duty so to do, after the plaintiff had proved the boat capsized, the property damaged, and landed at a different place from the place of destination. The judgment of the county court is therefore affirmed.

